OPINION OF THE COURT
William H. Keniry, J.
*292 In a case of first impression, petitioner corporation seeks to compel prelitigation disclosure of the names of certain of its employees whom it suspects have misappropriated corporate computer resources. Quad /Graphics, Inc. is a major national commercial printing company. Its headquarters is in Wisconsin. It maintains a large plant (1,000 employees) in Saratoga Springs, New York. Petitioner uses computers extensively in its business. Examination of relatively high long distance telephone bills led the corporation to suspect that its computers were being misused.
The respondent in the case is Southern Adirondack Library System (SALS). SALS is a cooperative system composed of 30 member libraries located in four upstate New York counties. Respondent operates, from its headquarters in Saratoga Springs, New York, an electronic information service known as "Library Without Walls”. Users of "Library Without Walls” (LWW) possessing a valid library card and a personal identification number issued by any one of SALS’ participating libraries may access the Internet. A library-based computer or a personally owned computer can be used to log on-line. Access is free for 30-minute periods.
Quad/Graphics employees are prohibited from using Quad/ Graphics computers for personal purposes. Petitioner’s Sarátoga computer terminals do not have the capability of directly accessing outside telephone lines. However a computer operator in the Saratoga Springs plant may log into the company’s mainframe computer located in Wisconsin. The terminal user can cause the mainframe, by the use of a Quad/Graphics password, to access long distance. Then by telephoning the library in Saratoga Springs and providing a correct library password the employee-caller accomplishes a hookup with the LWW (third party) computer network.
- Petitioner contends that a cadre of its Saratoga Springs-based employees employed the library feature during working hours to effect the hookup and explore the Internet for personal purposes. Petitioner, after examining its long distance telephone billing records, asserts that unauthorized use between April 1995 and December 1996 has resulted in petitioner incurring over $23,000 in long distance telephone charges to the LWW telephone line and in petitioner losing 1,770 Sara-toga Springs employee manhours in devotion to personal use of the Internet. Petitioner, through internal investigative techniques, has been able to decipher nine distinct 13-digit identification numbers which were used to access LWW from its computer system.
*293 Petitioner, in an effort to learn the identity of the individuals to whom those nine identification numbers were issued, made a request under the Freedom of Information Law (Public Officers Law art 6) to the Saratoga Springs Public Library for such information. Petitioner’s request was rejected by the library on the basis that such information is confidential and may not be voluntarily disclosed.*
In this application petitioner contends that SALS, as a quasi-municipal agency, is subject to and bound by the Freedom of Information Law and is required to disclose the names it seeks.
SALS contends that under CPLR 4509 the identities are required to be kept confidential.
CPLR 4509, first enacted in 1982 (L 1982, ch 14) and broadened in 1988 (L 1988, ch 112), provides as follows: "Library records, which contain names or other personally identifying details regarding the users of public, free association, school, college and university libraries and library systems of this state, including but not limited to records related to the circulation of library materials, computer database searches, interlibrary loan transactions, reference queries, requests for photocopies of library materials, title reserve requests, or the use of audio-visual materials, films or records, shall be confidential and shall not be disclosed except that such records may be disclosed to the extent necessary for the proper operation of such library and shall be disclosed upon request or consent of the user or pursuant to subpoena, court order or where otherwise required by statute.”
The court has reviewed the legislative history of CPLR 4509 as contained in the Bill Jackets for the original enactment and the subsequent amendment. The supporting Memorandum issued by the Assembly of the State of New York when the law was enacted states: "The New York State Legislature has a strong interest in protecting the right to read and think of the people of this State. The library, as the unique sanctuary of the widest possible spectrum of ideas, must protect the confidentiality of its records in order to insure its readers’ right to read anything they wish, free from the fear that someone might see what they read and use this as a way to intimidate them. Records must be protected from the self-appointed guardians of public and private morality and from officials who *294 might overreach their constitutional prerogatives. Without such protection, there would be a chilling effect on our library users as inquiring minds turn away from exploring varied avenues of thought because they fear the potentiality of others knowing their reading history.” (Mem of Assemblyman Sanders, 1982 NY Legis Ann, at 25.)
Enactment of CPLR 4509 in 1982 was supported by the New York Civil Liberties Union, the New York Public Library Association and the New York County Lawyers’ Association. The State Education Department and State University of New York raised no objection to the bill.
In 1988, the Law Revision Commission of the State of New York, acting on a request by library staff and faculty of State University of New York at Buffalo and its Law School, recommended that CPLR 4509 be broadened to protect additional library records. The statute as originally enacted protected only a library’s circulation records. An amendment enacted in 1988 protected records relating to computer database searches, interlibrary loan transactions, reference inquiries, photocopy requests, title reserve requests and audio-visual materials, films and records usage information. The New York Public Library Association, the State Education Department, and the New York Civil Liberties Union supported broadening CPLR 4509’s reach.
It is clear that CPLR 4509 does not grant an absolute privilege prohibiting the disclosure of library records. The law is intended to allow limited disclosure pursuant to court order. A court order is precisely what petitioner seeks. The salient issue is whether or not petitioner’s expressed desire to learn the identity of individuals who are alleged to have misused its computer system and misappropriated its property, in order to initiate civil legal proceedings, is a proper basis for release of the library system’s records.
It is the court’s determination that disclosure of the information sought should not be permitted. Petitioner certainly has an internal security problem involving the unauthorized use of its computer equipment and resources. However a criminal complaint is not before this court and apparently has not been made. Were this application to be granted, the door would be open to other similar requests made, for example, by a parent who wishes to learn what a child is reading or viewing on the Internet via LWW or by a spouse to learn what type of information his or her mate is reviewing at the public library.
The court recognizes the significance of the problem that petitioner faces and the difficulty that petitioner has encoun *295 tered in trying to identify the users. The Legislature has expressed, in rather direct and unequivocal fashion, a public policy that the confidentiality of a library’s records should not be routinely breached and this court, in denying the petitioner’s request, is following the clearly expressed legislative purpose of CPLR 4509.
One of the petitioner’s other arguments deserves brief comment. Petitioner contends that disclosure of the records sought is required under CPLR 4509 since it, as the owner of the computer equipment and telephone lines utilized to access the Internet, should be considered the "user” of LWW and thus it is entitled to the information as a matter of right. The argument is specious. The operation of a computer is controlled by the person who gives it commands. The users in this case are the individuals who actually operated the computers guiding them through the Internet.
Petitioner’s application is denied without costs.

 The Saratoga Springs Public Library was originally named as the respondent in this proceeding. An order, based upon a written stipulation, was made and entered substituting SALS as respondent since LWW was and is a program of SALS and not of the Saratoga Springs Public Library.